Jennifer DeCubellis
CEO

STATE OF MINNESOTA                     DISTRICT COURT

COUNTY OF HENNEPIN                     FOURTH JUDICIAL DISTRICT

                                                Case Type: Employment

                                                Court File No.:

Sabrina Thomas,

       Plaintiff,

                                                 **SUMMONS**

vs.

Hennepin Healthcare System, Inc.,

       Defendant.


THIS SUMMONS IS DIRECTED TO THE ABOVE-NAMED DEFENDANT:

**YOU ARE BEING SUED.** The Plaintiff started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

**YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.**
You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    ÉPÉE LAW FIRM, LLC
    1650 West End Blvd, Suite 100
    Minneapolis, MN 55416


**YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the

JUN 15 2021

Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED HIS SUMMONS.** If you do not answer within twenty-one (21) days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

**LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

ÉPÉE LAW FIRM, LLC

Date: 06/01/2021

/s/ Leopold Épée
Leopold Épée, ID# 0388307
Attorney for Plaintiff
1650 West End Blvd, Suite 100
Minneapolis, MN 55416
Telephone: (952) 697- 4045
Email: leo.epee@gmail.com

STATE OF MINNESOTA                    DISTRICT COURT

COUNTY OF HENNEPIN                    FOURTH JUDICIAL DISTRICT

Case Type: Employment

Court File No.:

Sabrina Thomas,

      Plaintiff,

vs.                                   **COMPLAINT**

Hennepin Healthcare System, Inc.,

      Defendant.

Plaintiff (Ms. Thomas) for her Complaint alleges:

## PARTIES

1. Ms. Thomas, a former employee of Defendant, resides in in Hennepin County, Minnesota. Ms. Thomas is an African-American woman who was 48 years old when Defendant terminated her employment.

2. Defendant, Hennepin Healthcare System, Inc. ("HHS"), is a Minnesota nonprofit corporation with its principal place of business in Hennepin County, Minnesota.

## BASIC FACTS

3. Ms. Thomas was employed at Hennepin Healthcare Systems, Inc. from June 18, 2014 until May 15, 2020. Her first position was as a Welcome Services Representative, which involved basic receptionist services, providing assistance to callers and visitors, such as informing them of visiting hours and directing people to their destination.

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 4 of 12

Complaint    Thomas vs. Hennepin Healthcare System, Inc.                2 of 10

4. In September 2019 Ms. Thomas started in the position of Patient Services Coordinator (PSC), in the Coordinated Care Program in the Infectious Disease/Positive Care Clinic at an hourly wage of $22.83 for 40 hours per week. In addition to general receptionist and customer service duties, a Patient Services Coordinator checks patients in, collects co-payments, schedules appointments, and verifies insurance.

5. The successful performance of Ms. Thomas's job duties as a Patient Services Coordinator required that the employer provide two-weeks of classroom training, one-month of on-the-job orientation and training, and on-the-job mentoring.

6. Ms. Thomas received three days of training, six days of orientation, and no mentoring.

7. In an assessment of her performance on 2/26/2020, the assessor stated, "Sabrina picked up on suggestions, tips, and concepts quickly. . . . . [O]nce it [a tool] was demonstrated, Sabrina was able to use it properly."

8. Defendant's employment was subject to a collective bargaining agreement that provided for progressive discipline.

9. Defendant discharged Ms. Thomas by a Notice of Intent to Dismiss on May 15, 2020, with an effective discharge date of May 27, 2020.

10. Ms. Thomas filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 1, 2020. The Charge alleged discrimination and harassment based upon her race (Black), her age (49), her disability, her association with a disabled person, retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and Titles I and V of the Americans with Disabilities Act of 1990, as amended. The Charge was cross-filed with the Minnesota Department of Human Rights.

11. The EEOC issued its Notice of Dismissal with right-to-sue notification to Ms. Thomas on March 4, 2021, which entitles her to bring Counts Two–Six of this lawsuit.

12. Ms. Thomas received the EEOC's notification letter on March 8, 2021.

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 5 of 12

Complaint   Thomas vs. Hennepin Healthcare System, Inc.   3 of 10

## COUNT ONE
## DISCRIMINATION FOR USE OF FMLA LEAVE

13. Plaintiff realleges paragraphs 1-9.

14. In response to Ms. Thomas's request on 12/20/19 for leave under the Family and Medical Leave Act to care for her parent, she was approved for FMLA intermittent leave between 12/27/2019 and 5/26/2020.

15. Defendant discharged Ms. Thomas 11 days before the expiration of the approved leave period for parental care.

16. Ms. Thomas was on continuous FMLA-approved leave for the 40 days from 2/26/2020 through 4/5/2020.

17. During her 40-day-FMLA-approved leave, Ms. Thomas's doctor postponed her return-to-work date at least twice because of her continuing medical issues.

18. One day after her return to work after her 40-day-leave, on 4/6/2020 Defendant suspended Ms. Thomas for two days without pay.

19. The first item used in support of the suspension on 4/6/2020 was the same complaint that served as a basis for a written reprimand on 2/12/2020, which was also the same day that she applied for FMLA leave for her own care. Defendant did not cite any evidence for the two new alleged mistakes that allegedly occurred before Ms. Thomas's 40-day leave.

20. The suspension on 4/6/2020 was less than six weeks before the Notice of Intent to Dismiss of 5/15/2020.

21. Sarah Bruemmer, a Care Plus Coordinator, supplied the mostly-contrived complaints to Ms. Thomas's supervisor, manager Terri Peterson, to support the progressive discipline that Defendant used as the pretextual basis to discharge Ms. Thomas.

22. Ms. Bruemmer violated Ms. Thomas's FMLA rights by sending an email to department employees illegally disclosing the date of Ms. Thomas's use of FMLA leave.

23. Supervisor Peterson was adversely affected by Ms. Thomas's use of FMLA leave. She was responsible for the smooth running of the patient intake front desk, which needed to be staffed by two Patient Services Coordinators.

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 6 of 12

Complaint    Thomas vs. Hennepin Healthcare System, Inc.                4 of 10

24. In Ms. Thomas's absence, the only other Patient Services Coordinator (PSC) was Martha Roufs, who is Caucasian and under 40 years of age. During Ms. Thomas's absence, the supervisors needed to obtain PSC floaters to fill in for Ms. Thomas. A floater was not available on some days during Ms. Thomas's absence, so Ms. Roufs had to work by herself because there was no floater to cover for Ms. Thomas's absence, which was detrimental to the services provided to medical staff and patients.

25. The decision makers for Ms. Thomas's dismissal discriminated against her because of the reduced efficiency, compromised patient service, and frustrations for medical staff that followed Ms. Thomas's FMLA-approved absences.

26. Ms. Thomas's request on December 20, 2019 for intermittent leave caused burdensome scheduling difficulties for management because they could not plan for floater coverage for Ms. Thomas's absences on an as-needed diurnal basis.

27. Defendant failed to offer Ms. Thomas a return to her previous position as a Welcome Services Representative, even though she had worked successfully in that position for over five years. Instead, that department told Ms. Thomas's union representative that they did not want her back.

28. Since her performance in her previous position was without blemish, Ms. Thomas's approval for—and use of—intermittent and continuous FMLA leave was the only reason for the employer's failure to offer her continued employment by resuming her previous position.

29. The proximity of Ms. Thomas's extended leave to the date of her discharge is sufficiently close to establish a causal link.

30. The temporal proximity between Ms. Thomas's use of leave and the disciplinary actions right up to her dismissal establishes her supervisors' animus toward her using FMLA leave.

31. The written reprimand, suspension, and dismissal were pretexts for Defendant's discrimination against Ms. Thomas for her use of FMLA leave.

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 7 of 12

Complaint   Thomas vs. Hennepin Healthcare System, Inc.   5 of 10

32. The short intervals between each step of the progressive discipline following Ms. Thomas's 40-day FMLA leave show that she was on her supervisors' orchestrated and pre-determined course with discriminatory dismissal as the destination.

33. Defendant's discriminatory discharge of Ms. Thomas for taking FMLA leave violated the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1).

34. Ms. Thomas is entitled to judgment against Defendant for back pay and front pay damages equal to the amount of her wages and employment benefits for her two-day suspension and from the date of her dismissal until she can find a position comparable in responsibility and pay to the PSC position, with interest. 29 U.S.C. §§ 2617(a)(1)(A)(i)(I), 2617(a)(1)(A)(ii).

35. Ms. Thomas is entitled to liquidated damages, including interest. 29 U.S.C. § 2617(a)(1)(A)(iii).

36. Ms. Thomas is entitled to employment reinstatement. 29 U.S.C. § 2617(a)(1)(B).

37. Ms. Thomas is entitled to an award for her attorney fees and costs. 29 U.S.C. § 29 U.S.C. 2617(a)(3).

## COUNT TWO
## DISCRIMINATION BASED UPON DISABILITY

38. Plaintiff realleges paragraphs 1-12.

39. Ms. Thomas has the following disabilities that qualify as disabilities under the Minnesota Human Rights Act and the Americans with Disabilities Act of 1990, as amended: hyperhidrosis (excessive sweating); eye conditions: anterior uveitis, floaters, cataracts, myopia with astigmatism.

40. Ms. Thomas's disabilities qualified her for leave under the Family and Medical Leave Act.

41. Defendant knew that Ms. Thomas qualified as a disabled employee under the Americans with Disabilities Act.

42. Defendant knew that Ms. Thomas's mother suffers from cancer, which qualified Ms. Thomas for approved intermittent FML.

43. Defendant knew that Ms. Thomas had a qualifying disabled family member under the Americans with Disabilities Act.

44. Upon belief, Defendant replaced Ms. Thomas with a person who is not a member of her protected class.

45. Defendant acted with malice or reckless indifference in discharging Ms. Thomas.

46. Defendant's dismissal of Ms. Thomas discriminated against her on account of her disabilities, and due to her relationship to her mother, who also has a disability, in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08, subdivision 2, §§ 363A.01-.44, and Titles I and V of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12102(1)(A),(B),(C), 12112(a),(b)(4), 12101-12213.

47. As a result of her discriminatory discharge, Ms. Thomas has incurred economic damage, including loss of past and future wages, suffered from emotional distress, mental anguish and inconvenience.

48. Ms. Thomas is entitled to reinstatement, back pay, future monetary losses, damages for emotional distress or mental anguish, inconvenience, treble damages, punitive damages, and attorney's fees and costs under the Americans with Disabilities Act, and the Minnesota Human Rights Act, Minn. Stat. § 363A.

## COUNT THREE
## DISCRIMINATION BASED UPON RACE

49. Plaintiff realleges paragraphs 1-12.

50. Defendant did not provide Ms. Thomas with the same training for the Patient Services Coordinator (PSC) position as provided to her white co-workers.

51. Defendant did not discipline and dismiss Ms. Thomas's white coworkers for the same type of mistakes as the ones Ms. Thomas allegedly made.

52. Defendant discriminated against Ms. Thomas on the basis of her race/Black in violation of Title VII of the Civil Rights Act of 1964, as

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 9 of 12

Complaint    Thomas vs. Hennepin Healthcare System, Inc.                7 of 10

amended, 42 U.S.C. 2000e-2(a)(1), 2000e-2(d); and the Minnesota Human Rights Act, Minn. Stat. § 363A.

53. As a result of her discriminatory discharge, Ms. Thomas has incurred economic damage, including loss of past and future wages, suffered from emotional distress, mental anguish and inconvenience.

54. Ms. Thomas is entitled to damages for her loss of wages, past and future, reinstatement, damages for emotional distress or mental anguish, inconvenience, treble damages, punitive damages, and attorney's fees and costs. Title VII of the Civil Rights Act of 1964, as amended, and the Minnesota Human Rights Act, Minn. Stat. § 363A.

## COUNT FOUR
### HOSTILE WORK ENVIRONMENT—RACIAL HARASSMENT

55. Plaintiff realleges paragraphs 1-12.

56. Ms. Thomas's coworkers repeatedly harassed her by making racially discriminatory comments to her or about her in her presence.

57. Ms. Thomas's co-workers made the following racial statements to Ms. Thomas:

> "You wear wigs, a lot of black people wear colored wigs. Why don't you wear your real hair."

> "You're sweaty. Black people sweat a lot."

> "I see you have collard greens for lunch. That's black people food."

> "It smells like black dog shit."

58. Ms. Thomas reported to Defendant how she was being harassed by her co-workers. Ms. Thomas complained to her supervisor, manager Terri Peterson, and to Senior Resources Human Resources Business Partner Roselynn Lockett, about the racial slurs she received from her coworkers, in a meeting on 2-5-2020.

59. Defendant failed to take corrective action to remediate Ms. Thomas's coworkers' racial comments.

60. The coworkers' harassing abuse lowered Ms. Thomas's self-esteem and undermined her psychological and physical integrity, with lasting harmful effect.

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 10 of 12

Complaint   Thomas vs. Hennepin Healthcare System, Inc.   8 of 10

61. Defendant's maintenance of a hostile work environment violates Title VII of the Civil Rights Act of 1964, as amended, and of the Minnesota Human Rights Act, Minn. Stat. § 363A.

62. Ms. Thomas is entitled to damages for her loss of wages, past and future, reinstatement, damages for emotional distress or mental anguish, inconvenience, treble damages, punitive damages, and attorney's fees and costs. Title VII of the Civil Rights Act of 1964, as amended, and the Minnesota Human Rights Act, Minn. Stat. § 363A.

## COUNT FIVE
## DISCRIMINATION BASED UPON AGE

63. Plaintiff realleges paragraphs 1-12.

64. At the time of her discharge, Ms. Thomas was 48 years old.

65. Defendant did not provide Ms. Thomas with the same training for the Patient Services Coordinator (PSC) position as provided to her younger (below age 40) co-workers.

66. Defendant did not discipline Ms. Thomas's coworkers for the same types of mistakes as the ones Ms. Thomas allegedly made.

67. Defendant's discharge of Ms. Thomas arose from the discriminatory failure to provide her the opportunity for successful performance of her duties.

68. Defendant discharged Ms. Thomas because of her age, in violation of the Age Discrimination in Employment Act (ADEA) and the Minnesota Human Rights Act, Minn. Stat. § 363A.

69. Ms. Thomas is entitled to damages for her loss of wages, past and future, reinstatement, damages for emotional distress or mental anguish, inconvenience, liquidated damages, treble damages, and attorney's fees and costs, under the Age Discrimination in Employment Act (ADEA) and the Minnesota Human Rights Act, Minn. Stat. § 363A.

## COUNT SIX
## RETALIATION FOR FILING EEOC CHARGE

70. Plaintiff realleges paragraphs 1-12.

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 11 of 12

Complaint    Thomas vs. Hennepin Healthcare System, Inc.                9 of 10

71. Following Ms. Thomas's discriminatory discharge, Defendant proposed reemploying Ms. Thomas in another position.

72. On June 19, 2020 Senior Human Resources Business Partner Roselynn Lockett informed Ms. Thomas's union representative that "we are willing to bring her [Ms. Thomas] back in this role [as a screener]".

73. The Union Representative informed Ms. Thomas about the email on the same day and that another union official would call her.

74. Union President Carmenlita Brown called Ms. Thomas about a week later with more details of Defendant's offer. Ms. Thomas replied that she would like to accept the screener position. In a follow-up call by Ms. Thomas, Ms. Brown told her that she had not heard anything further from Ms. Lockett.

75. After Ms. Thomas filed a Charge of Discrimination against Defendant, she did not hear anything further from Defendant about her acceptance of the screener position.

76. No intervening events occurred that would account for the withdrawal of the offer of reemployment except for the EEOC filing.

77. Ms. Thomas's filing of her EEOC complaint was the sole reason that Defendant declined to re-employ Ms. Thomas.

78. Defendant's withdrawal of the offer of re-employment violated Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. 2000e-3(a), and the Minnesota Human Rights Act, Minn. Stat. § 363A.

79. Ms. Thomas is entitled to an award of back pay, front pay, lost benefits, reinstatement, pain and suffering, emotional distress, treble damages, punitive damages, and attorneys' fees and costs, under Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. 2000e-3(a), and the Minnesota Human Rights Act, Minn. Stat. § 363A.

**Wherefore, Plaintiff, Ms. Thomas,** requests that the Court award her the following relief:

1. Judgment in excess of $50,000, upon the legal claims stated above, including treble damages, a substantial civil penalty,

CASE 0:21-cv-01564-DWF-TNL   Doc. 1-1   Filed 07/06/21   Page 12 of 12

Complaint   Thomas vs. Hennepin Healthcare System, Inc.   10 of 10

reasonable costs, disbursements, witness fees and attorneys' fees, under the various counts.
2. Such further and additional relief as the Court may deem just under the circumstances, including, but not limited to, reinstatement and a decree prohibiting Defendant from discriminating under the law for a reasonable period of time.

**ÉPÉE LAW FIRM LLC**

/s/ Leopold B. Épée                                   Date: 06/01/2021

**By Leopold B. Épée (#0388307)**
**1650 West End Blvd, Suite 100**
**Minneapolis, MN 55416**
**Telephone: (952) 697 – 4045**
**Email: leo.epee@gmail.com**

## ACKNOWLEDGMENT

I acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes § 549.211 to the party against whom the allegations in this pleading are asserted.

**ÉPÉE LAW FIRM LLC**

/s/ Leopold B. Épée                                   Date:    06/01/2021

**By Leopold B. Épée (#0388307)**
**1650 West End Blvd, Suite 100**
**Minneapolis, MN 55416**
**Telephone: (952) 697 – 4045**
**Email: leo.epee@gmail.com**